IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HEATHER M. MOSHER,
    Plaintiff,

vs.                                              Case No.: 5:18cv109/EMT

ANDREW SAUL,
Commissioner of Social Security,[1]
    Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition

pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the

parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 8, 9).  It is now before

the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for

review of a final decision of the Commissioner of the Social Security Administration

("Commissioner") denying Plaintiff's application for supplemental security income

("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019.  Pursuant to
Fed. R. Civ. P. 25(d), he is therefore automatically substituted for Nancy A. Berryhill as the
Defendant in this case.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded for additional administrative proceedings.

I.     PROCEDURAL HISTORY

On February 24, 2015, Plaintiff filed an application for SSI, and in the application she alleged disability beginning January 1, 2007 (tr. 11).[2]  She later amended the onset date to April 30, 2015 (tr. 11, 29).  Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on February 27, 2017, and on June 14, 2017, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time from February 24, 2015, through the date of her decision (tr. 11–20).[3]  The Appeals Council subsequently denied Plaintiff's request

---

[2] All references to "tr." refer to the transcript of Social Security Administration record filed on August 6, 2018 (ECF No. 12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

[3] As noted, Plaintiff amended her onset date to April 30, 2015, but the ALJ considered her claim as though the relevant period commenced two months earlier, on February 24, 2015, the date Plaintiff filed her application for SSI.  The undersigned will do the same, *see* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file), but notes that the minor discrepancy has no bearing on the court's analysis or conclusions.

for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.   FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (see tr. 11–20):

(1)   Plaintiff has not engaged in substantial gainful activity since February 24, 2015, the application date;

(2)   Plaintiff has the following severe impairments: fibromyalgia, L4-5 disc herniation with foraminal encroachment, lumbosacral radiculitis, lumbar disc degeneration, cervicalgia, plantar fasciitis (left foot), and obesity;

(3)   Plaintiff has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)   Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except Plaintiff must be able to alternate between sitting and standing at thirty-minute intervals as needed; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, and crouch but never kneel or crawl; she can occasionally be exposed to heat, wetness, and humidity but should avoid all exposure to excessive vibration and workplace hazards such as unprotected heights and moving machinery; and she would be absent from work one day monthly due to her impairments;

(5)   Plaintiff is unable to perform any past work;

(6)   Plaintiff was born on October 11, 1975, and was 39 years of age, which is defined as a younger individual aged 18–49, on the date the application was filed;

(7)     Plaintiff has at least a high school education and is able to communicate in English;

(8)     Transferability of job skills is not an issue because Plaintiff has no past relevant work;

(9)     Considering Plaintiff's age, education, work experience, and RFC, there are light jobs that exist in significant numbers in the national economy that Plaintiff can perform, including office clerk assistant, ticket taker, and mail sorter;

(10)   Plaintiff has not been under a disability, as defined in the Act, since February 24, 2015, the date the application was filed.

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied,

the Commissioner's decision will not be disturbed if in light of the record as a whole

the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g);

Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote

v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a

scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison

Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates

against the Commissioner's decision, the decision must be affirmed if supported by

substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify

as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:18cv109/EMT

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

A.     Personal and Employment History

When Plaintiff applied for SSI in 2015, she was thirty-nine years of age, stood at five feet and two inches, and weighed two-hundred pounds (tr. 49).  She testified at her hearing in February of 2017 that she last worked in 2007 as a cashier and quit because the job caused her "stress" and because its physical requirements, namely, lifting pallets, caused pain (tr. 32; *see also* tr. 160).  She also previously worked as a cook and a housekeeper (tr. 160).

Plaintiff testified that she "feel[s]" she cannot work because her pain would cause her to miss too many work days (tr. 32). She claimed that on "bad days" she has to force herself to get out of bed, is unable to leave the house, and cannot trust herself to drive or do anything properly (tr. 33). Plaintiff rated her pain at an eight or a nine on a ten-point scale (hereinafter "[reported pain level]/10") and noted it makes her "nauseated" (tr. 35). Plaintiff stated that she has "about two" bad days per week and that when her fibromyalgia "flares-up" the symptoms last a few hours to a few days (tr. 36). Plaintiff reported "shooting pain" in her back, upper leg, and upper arm that occurs "for no reason" (tr. 40). She also reported having "severe" headaches two or three times per month that last a few hours to most of the day, and she noted that medication does not help "very much" (tr. 40–41). Plaintiff stated she needs a cane for assistance five to six times per month due to pain and numbness (tr. 39). Plaintiff also has problems sleeping "most nights" and wakes up tired and fatigued (tr. 40). She has three to four "good days" per week, during which her worst pain is at a 4/10; however, she is able to "ignore [the pain] and work a little bit through it" (tr. 35–36). On good days Plaintiff is able to do smaller loads of laundry, cook "a little," do some dishes, and perform other small chores (tr. 34).

B.    Relevant Medical History

Evidence that Predates the Relevant Period

Plaintiff first complained of back and neck pain during a visit with treating physician John A. Spence, M.D., on August 25, 2011 (tr. 230). Thereafter, she was seen periodically over the next several years by various providers, but despite her regular complaints of pain in her neck and back and numbness in her extremities, her examinations were largely unremarkable (*see, e.g.*, tr. 231–32 (normal cervical and musculoskeletal range of motion ("ROM"), to include in the right upper extremity), tr. 256 (normal cervical ROM), tr. 259 (normal cervical ROM, mildly reduced lumbar ROM, no instability), tr. 286 (normal ROM, negative straight leg test), tr. 305–06 (some pain and tenderness but normal ROM), tr. 316–17 (no abnormalities noted), tr. 319 (normal ROM and strength, negative straight leg test), tr. 218–219 (steady gait, no abnormalities), tr. 216–17 (full motor strength in three extremities, normal ROM, no instability), tr. 214–215 (normal gait, negative straight leg test, motor and sensory examination normal/intact)).

Plaintiff was first assessed with fibromyalgia on December 13, 2012, at which time Dr. Spence reported "11/18" tender points (tr. 286). On May 2, 2013, Dr. Spence reported "16/18" tender points (tr. 295).

An MRI of the cervical spine from May 15, 2013, was largely normal and revealed only minimal disc degeneration at C5-6, and an MRI of the lumbar spine from March 17, 2014, revealed "minimal" and "slight" findings, including right near

lateral disc herniation at L4-5 associated with foraminal encroachment (tr. 300, 211). Plaintiff was diagnosed with lumbosacral radiculitis and cervicalgia (tr. 213, 260).

Overall, Plaintiff's treatment was conservative, consisting of physical therapy (tr. 236), injections (tr. 220), water therapy, and recommendations for lifestyle changes (e.g., good nutrition, exercise program) (tr. 342).

Evidence from the Relevant Period (February 24, 2015–June 14, 2017)

At a visit with Dr. Spence on April 30, 2015, Plaintiff reported worsening back and neck pain which caused problems with walking and sleeping, and she claimed to be "miserable" (tr. 349). Dr. Spence again assessed fibromyalgia and reported "15/18" tender points which were painful to light touch (tr. 350). In June of 2015, Plaintiff reported trouble walking occasionally and felt she needed a cane at those times (tr. 370). Despite Plaintiff's complaints, Dr. Spence continued to document normal ROM, normal strength in her back and extremities, and negative straight leg tests (tr. 371, 374).

On January 19, 2016, Plaintiff reported that her pain had progressed to her heels (left worse than right), but Dr. Spence found no decreased ROM, joint crepitations, or pain on motion in the lower left extremity (tr. 379–80). Plaintiff was assessed with lumbago, lumbar degenerative disc disease, fibromyalgia, and plantar fasciitis of the left foot (tr. 380). Dr. Spence continued to treat Plaintiff conservatively, including by

administering injections in June of 2015 and suggesting a Butrans patch in September of 2015 (tr. 371, 375).

C.     Other Information Within Plaintiff's Claim File

A treating source orthopedic questionnaire addressed to Panhandle Family Care Associates ("PFCA") was completed on September 14, 2014 (tr. 209–10). The provider's signature is not legible, but the questionnaire indicates that Plaintiff had last been examined on July 23, 2014 (*id.*).[5] The provider assessed lumbago and lumbar disc disease without myelopathy and reported that Plaintiff had limited ROM only with forward flexion of the spine, as well as chronic pain (*id.*). Plaintiff was noted to have full "5/5" strength in her grip and lower extremities (tr. 210). According to the provider, she did not require an assistive device to ambulate and was able to perform fine and gross manipulation on a sustained basis (*id.*).

On March 30, 2015, a physician at PFCA completed a treating source fibromyalgia questionnaire (tr. 347–48). Again, the signature is illegible, but it appears to have been completed by Dr. Spence. He reported that Plaintiff had a history of chronic pain, malaise, and eleven positive tender points (tr. 347). Despite

---

[5] It appears that Dr. Spence completed the questionnaire, as he is the primary provider affiliated with PFCA, and he treated Plaintiff on July 23, 2014 (*see* tr. 333).

this, she had 5/5 grip strength, 5/5 lower extremity strength, and did not require an assistive device or frequent periods of rest (tr. 348).

On July 13, 2015, a non-examining agency physician, Efren Baltazar, M.D., assessed Plaintiff's physical limitations (tr. 68–70). Dr. Baltazar's opinions generally correlate with a finding that Plaintiff could perform light work but with environmental restrictions, to include no concentrated exposure to extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, or hazards (*see* tr. 69–70).

A Vocational Expert ("VE"), Ron Mayne, testified at Plaintiff's hearing (tr. 42–46). He classified Plaintiff's past work as a convenience store clerk, prep cook, and housekeeper as either "medium" or "medium as performed" (tr. 43–44). Thus, he found that a hypothetical person with Plaintiff's RFC (i.e., light work but with postural and environmental conditions) could not perform Plaintiff's past work; however, the person could perform other light jobs in the national economy such as office work assistant, ticket taker, and mail sorter (tr. 44–45). With respect to "entry-level positions," the VE stated that an employee is "usually not allowed to miss *any*" days during a "probationary period," which is the first thirty to ninety days on the job (tr. 45) (emphasis added). The VE also testified that if the person would be absent "more than two days per month," she could not maintain employment (tr. 45). Lastly, the VE testified that a person who, on half of the days during the month, would be off

task fifteen to twenty percent on unscheduled breaks, would not be employable in a full-time position (tr. 46).

V.    DISCUSSION

Plaintiff raises two grounds for relief: (1) the ALJ erred in relying upon the VE's testimony to find Plaintiff "not disabled" at step five, and (2) the ALJ erred in evaluating Plaintiff's subjective complaints of pain and other symptoms.

A.    Vocational Expert Testimony

Plaintiff contends the ALJ erred by overlooking the VE's testimony that an individual who would be expected to be absent from work during a probationary period would be unemployable (ECF No. 18 at 18).

In performing the five-step, sequential evaluation process, an examiner who concludes that a claimant is unable to do her past relevant work must then proceed to the "final step of the evaluation process to determine whether in light of '[RFC],' age, education, and work experience the claimant can perform other work." Brown v. Commissioner of Social Security, 680 F. App'x 822, 827 (11th Cir. 2017) (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).  At this step, the ALJ is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience. See 20 C.F.R. § 416.912(f); 20

C.F.R. § 416.960(c). "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy." Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The ALJ may either apply the Grids or she may consult a VE and pose hypothetical questions to establish whether an individual with the claimant's impairments would be able to find employment. *Id.* at 1239–40.

Here, in determining Plaintiff's RFC, the ALJ found that she was capable of light work with added environmental and postural limitations, and the ALJ further qualified that Plaintiff would be absent from work one day per month (tr. 15). Given these limitations, the ALJ concluded that Plaintiff could not perform her past work. Thus, the burden of showing the existence of other jobs in the national economy that Plaintiff could perform shifted to the ALJ. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986) (*citing* Gibson v. Heckler, 762 F.2d 1516, 1518 (11th Cir. 1985)).

To meet this burden, the ALJ first received testimony from the VE that a hypothetical person with Plaintiff's RFC could perform the three light jobs of office work assistant, ticket taker, and mail sorter. The ALJ then elicited the following testimony from the VE:

ALJ: Now, if an individual had to miss work from time to time, what —how many days could they miss work and still maintain their job?

VE: No more than two days per month, your Honor.

ALJ: And then what if someone was consistently absent two days a month?

VE: Well, actually, if you're in a probationary period, in entry-level positions, which is a 30 to 90 day period, the employee is usually not allowed to miss any. After they have accrued some time, following the probationary period, if it's consistent, unscheduled two days off each month, that would preclude full-time employment.

(tr. 45).

Thus, in effect, the VE testified that a person with Plaintiff's RFC—particularly the requirement that she miss one day of work per month—would not be able to sustain employment in entry-level positions that have probationary periods, because no absences are permitted during the probationary periods of such jobs. Relying on the VE's testimony, the ALJ found Plaintiff not disabled at step five because she could perform the "representative jobs" of office work assistant, ticket taker, and mail sorter (tr. 19).

The ALJ's finding at step five cannot be upheld. Although the VE did not definitively state that the three jobs at issue are in fact "entry-level positions," or that each entails a probationary period, such is the implication when the exchange between

the ALJ and VE is placed in context and considered as a whole.[6]  It thus appears that

Plaintiff cannot perform the "representative occupations" identified by the VE because

she would not be able to maintain employment during the probationary period(s) for

these occupations, due to the requirement in her RFC that she miss one day of work

per month.

The ALJ did not recognize, consider, or resolve this issue during the VE's

testimony or later in her written opinion—and by failing to do so, the ALJ erred.  *See,*

*e.g.*, Social Security Ruling "SSR" 96-8p, 1996 WL 374184 (July 2, 1996) (in

determining a claimant's RFC, the ALJ "must also explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and

resolved"); SSR 82-62, 1982 WL 31386 (Jan. 1, 1982) ("The rationale for a disability

decision must be written so that a clear picture of the case can be obtained.  The

rationale must follow an orderly pattern and show clearly how specific evidence leads

to a conclusion."); Allen v. Barnhart, 357 F.3d 1140, 1145–45 (10th Cir. 2004)

---

[6]  The VE did note that each of the three jobs has a Specific Vocational Preparation, or "SVP," of two, but SVP levels do not categorize jobs as to whether they are entry-level or whether they have probationary periods.  "[SVP] is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *See* Dictionary of Occupational Titles (online, at https://occupationalinfo.org/appendxc_1.html) (last visited Aug. 5, 2019).  There are nine SVP levels, with level-one jobs requiring the least amount of time to learn job skills (i.e., a "[s]hort demonstration only") and level-ten jobs requiring the most time ("[o]ver 10 years").  *Id.*  Level-two jobs require "[a]nything beyond short demonstration up to and including 1 month" to learn job skills. *Id.*

(district courts should not draw factual conclusions on behalf of an ALJ or create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943)); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995) (to permit an informed review, ALJ must articulate her analysis of the evidence; "[o]nly then may a reviewing court track the ALJ's reasoning and be assured that the ALJ considered the important evidence").

In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts. Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur. *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice). A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993); *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v.

Sullivan, 936 F.2d at1219 ("The record . . . is fully developed and there is no need to remand for additional evidence."). In the instant case it is not clear that the cumulative effect of the evidence establishes disability without a doubt, and thus the ALJ's error requires a remand for additional administrative proceedings.

B.     Subjective Complaints of Pain and Other Symptoms

Although the undersigned has already determined that this case must be remanded, the court will briefly discuss Plaintiff's contention regarding the ALJ's alleged error in rejecting her subjective complaints of disabling pain and limitations.

When a claimant attempts to establish disability through her own testimony about her pain or other subjective symptoms, a two-part "pain standard" applies. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires the claimant to show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise" to the claimed symptoms. Wilson, 284 F.3d at 1225; *see also* 20 C.F.R. § 404.1529(a)–(b).

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms

limit the claimant's ability to work. 20 C.F.R. § 404.1529(b)–(c). *See also* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). An ALJ must "articulate explicit and adequate reasons" for discrediting a claimant's allegations of disabling symptoms. Foote, 67 F.3d at 1561–62. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Id*., 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Here, the ALJ generally concluded that while Plaintiff's impairments would reasonably be expected to cause the alleged symptoms, her allegations regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence of record (tr. 16). In pertinent part, the ALJ considered: (1) that Plaintiff's treatment was conservative throughout the period of review, consisting of pain management and recommended lifestyle modifications (tr. 213); (2) that she had no joint crepitations, and while she reported using a cane at times, the overall medical evidence revealed no walking limitations (tr. 380); (3) that various examinations revealed steady gait, negative straight leg tests, and ROMs that were largely within normal limits despite her persistent claims of moderate to severe pain (tr. 213, 215, 217, 219, 371, 374); and (4) that the opinions of Dr. Baltazar and/or those in the PFCA questionnaires noted full strength in Plaintiff's grip and extremities, an ability to perform fine and gross manipulative maneuvers on a

sustained basis, and no need for an assistive device or frequent rest periods (tr. 68–70, 209–10, 347–48).

The foregoing shows that the ALJ evaluated Plaintiff's subjective complaints according to the appropriate pain standard. Nevertheless, Plaintiff contends the ALJ erred in evaluating her fibromyalgia symptoms (ECF No. 18 at 18–26, citing SSR 12-2p). Pared to its essence, Plaintiff's argument is that fibromyalgia symptoms "wax and wane" over time, so a normal physical examination and lack of disabling symptoms on one day does not mean that she would have normal examinations and no symptoms on other days (*id*.). But the regulation cited by Plaintiff addresses this very point. *See* SSR 12-2P, 2012 WL 3104869, at *4–5 (July 25, 2012) ("Because the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the CE [consultative evaluation] has access to longitudinal information about the person.").

Here the ALJ considered the opinions of Dr. Spence, who, as Plaintiff's treating physician, had access to his own treatment records which cover an extended period of time. Likewise, Dr. Baltazer reviewed multiple records before forming his opinions in July of 2015, to include records from the PFCA, Tallahassee Orthopedic Clinic, and Plaintiff's primary care physician (tr. 63–67), as well as the results of physical examinations and MRIs obtained in 2011, 2013, and/or 2014 (tr. 66). Thus, both

physicians offered opinions regarding Plaintiff's overall functional limitations after considering the progression of Plaintiff's condition and symptoms over time. As such, the court finds no apparent error with regard to the ALJ's consideration of Plaintiff's fibromyalgia-related complaints.

However, because the case is being remanded on other grounds, the undersigned will direct the ALJ to reconsider Plaintiff's fibromyalgia in determining her RFC and in deciding whether the intensity and persistence of any fibromyalgia-related symptoms limit her ability to perform work-related activities—in light of the claim of error raised herein by Plaintiff.

## VI.  CONCLUSION

As explained above, the Commissioner's final decision is not supported by substantial evidence and cannot be affirmed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. This action will therefore be remanded for additional administrative proceedings. In particular, the ALJ should determine Plaintiff's RFC anew, including the effect of any fibromyalgia-related symptoms on the RFC, and ensure that any findings at step five (or elsewhere) are consistent with the RFC.

Accordingly, it is hereby **ORDERED**:

1.      That the clerk of court is directed to substitute Andrew Saul for Nancy A. Berryhill as Defendant.

2.      That the Commissioner is directed to remand this case to an Administrative Law Judge for further proceedings consistent with this Order.

3.      That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and **REMANDING** this case for further administrative proceedings.

4.      That the Clerk is directed to close the file.

At Pensacola, Florida this 12<u>th</u> day of August 2019.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

Case No.: 5:18cv109/EMT